UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAMES HOOD,

    Plaintiff,

v.                                                   Case No:   2:14-cv-540-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____

**OPINION AND ORDER**

Plaintiff James Hood seeks judicial review of the denial of his claim for Social Security disability benefits and supplemental security income by the Commissioner of the Social Security Administration ("Commissioner"). Plaintiff raised three issues:[1] (1) whether substantial evidence supports the finding of Administrative Law Judge Roxanne Fuller (the "ALJ" or "law judge") that Plaintiff's impairments did not meet or equal a listed impairment, specifically Listing 1.02; (2) whether the ALJ properly evaluated the medical opinion evidence; and (3) whether substantial evidence supports the ALJ's finding that there is other work Plaintiff can perform. Because the decision of the Commissioner is supported by substantial evidence and Plaintiff has not shown any reversible error, the decision will be affirmed.

---

[1] Any issue not raised by the Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ([A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed."), *cited in Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013).

I.

Plaintiff, who was forty-nine years old at the time of the administrative hearing and who has a high school and almost two-year vocational education, has worked primarily in construction and maintenance as a handyman and in hardware/millwork sales. Tr. 42, 50, 71, 246. He filed a claim for Social Security disability benefits and supplemental security income, alleging he became disabled and unable to work on March 26, 2007 due to severe back pain from a fall, obesity and other impairments. Tr. 203-12, 239, 241. His claim was denied initially and upon reconsideration. Tr. 120-39, 144-49.

At his request, Plaintiff received a *de novo* hearing before the ALJ during which he was represented by counsel. Tr. 37-77. Plaintiff and a vocational expert testified at the hearing. *Id.* On November 26, 2012, the ALJ issued a decision finding that Plaintiff is not disabled and denying his claim. Tr. 11-30. The law judge found that Plaintiff had the severe impairments of "obesity, right rotator cuff tear, left knee osteoarthritis, degenerative joint disease, diabetes mellitus, lumbar compression fracture, nephrolithiasis, gastrointestinal reflux disease, chronic obstructive pulmonary disease, hypertension, renal kidney disease, bipolar, substance abuse, depression, and anxiety." Tr. 14. The ALJ noted "[t]hese impairments impose more than a minimal restriction on the claimant's ability to perform basic work activities and therefore are severe impairments." *Id.* At step three, she concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P,

Appendix 1. . . ." *Id*. The ALJ expressly considered whether Plaintiff met the requirements of Section 1.00 (musculoskeletal system), among others. Tr. 14-16.

The law judge concluded, with these severe impairments, that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with the following limitations:

> except frequent push or pull with right dominant arm; never climb ramps or stairs; never climb ladders, ropes or scaffolds; never balance; occasional stoop, crouch, kneel, crawl; frequent reaching and overreaching with the 1ight dominant arm; occasional exposure to irritants such as fumes, odors, dust, and gases; occasional exposure to poorly ventilated areas; no exposure to moving mechanical parts; no operating a motor vehicle; no exposure to unprotected heights; able to remember and carry out one to two step instructions; able to perform simple, routine, repetitive tasks; and have only occasional superficial interaction with the public, co-workers, and supervisors.

Tr. 16. The ALJ ruled that Plaintiff's impairments and these limitations prevented Plaintiff from performing his past relevant work as a handyman, which is classified as semi-skilled work requiring a medium exertional level and thus exceeds Plaintiff's RFC. Tr. 28. After posing hypotheticals to the VE, the ALJ determined that considering the Plaintiff's age, education, work experience and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform, such as final assembler, table worker and charge account clerk, all of which are unskilled, sedentary jobs. Tr. 29. Accordingly, the ALJ ruled that Plaintiff is not disabled through the date of the decision. Tr. 29. The Appeals Council let stand the decision of the ALJ as the final decision of the Commissioner. Tr. 1-5. Plaintiff filed an appeal in this Court on September 12, 2014. Doc. 1.

## II.

A claimant is entitled to disability benefits when he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. § 404.1520. The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit recently has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." *Hunter v. Commissioner*, ---F.3d----, 2015 WL 8754457 at *2 (11th Cir. 2015), *citing Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Commissioner, 2015 WL 1453364* at *2 (11th Cir. 2015), *citing Grant v. Richardson, 445 F.2d 656 (5th Cir.1971).*

## III.

*A. Whether the ALJ properly determined that Plaintiff's impairments do not meet or equal a listed impairment.*

Plaintiff's first argument on appeal concerns the ALJ's decision in step three that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part

5

404, Subpart P, Appendix 1, specifically Listing 1.02. Plaintiff argues that the ALJ failed to evaluate whether her "combination of impairments medically equals Listing 1.02," and it was error for the ALJ to continue with the remaining steps and that instead she should have found at step three that Plaintiff was disabled. Doc. 22 at 1, 16-22. Alternatively, Plaintiff argues that remand is required because the ALJ should have consulted a medical expert about equivalence and otherwise failed to clearly articulate that Plaintiff does not meet or equal Listing 1.02. *Id.* at 22. The Commissioner responds that the ALJ expressly considered Plaintiff's right rotator cuff tear, left knee osteoarthritis and degenerative joint disease and lumbar compression fracture under section 1.00 (Musculoskeletal System) yet found the medical evidence fell short of the criteria for this section. Doc. 23 at 6, Tr. 14. Upon review of the record, the Court finds substantial evidence supports the ALJ's determination.

The listings describe impairments that the Commissioner considers severe enough to prevent a person from doing "any gainful activity, regardless of his or her age, education, or work experience." *See* 20 C.F.R. §§ 404.1625(a), 416.925(a). If an adult's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. . . ." *Bowen v. Yuckert,* 482 U.S. 137, 141 (1987), *cited in Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). The Eleventh Circuit has described how the standard is met or equaled:

> In order to *meet* a listing, the claimant must (1) have a diagnosed condition that is included in the listings and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable listing and the duration requirement. A

> diagnosis alone is insufficient. [] In order to *equal* a listing, the medical findings must be at least equal in severity and duration to the listed findings.

*Wilkinson on Behalf of Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987), citing 20 C.F.R. § 416.925(c)-(d). The burden of establishing that a claimant's impairments meet or equal a listing rests with the claimant, who must produce specific medical findings that satisfy all the criteria of a particular listing. 20 C.F.R. § 404.1520(a)(4).

The relevant listing in this case, in section 1.00 (Musculoskeletal System), is described as follows:

> 1.02 *Major dysfunction of a joint(s) (due to any cause)*: Characterized by gross anatomical deformity (e.g. subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 CFR Part 404, subpart P, app. 1, § 1.02. Section 1.—B2b defines inability to ambulate effectively as follows:

> (1) *Definition*. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out

7

>activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

404 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b.

In making her determination at step three with respect to impairments under section 1.00, musculoskeletal system, the ALJ assessed Plaintiff's right rotator cuff tear, left knee osteoarthritis and degenerative joint disease, and his lumbar compression fracture. Tr. 14. She determined that "the medical evidence falls short of the criteria of the section, and no medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." *Id.* The ALJ considered Plaintiff's diagnosis of obesity and, consistent with SSR 02-1p, the effects of Plaintiff's obesity "not only under the listings, but also when assessing a claim at other steps of the sequential evaluation process," including his RFC. Tr. 15.

The ALJ discussed in detail Plaintiff's medical treatment records with respect to his right rotator cuff tear, left knee osteoarthritis and degenerative joint disease, and his lumbar compression fracture beginning in 2004 when he injured his left knee and back after falling from a ladder. Tr. 17. She noted that the emergency treatment notes showed he was able to "get up independently and ambulate into his room without significant difficulty" and that he was discharged later that day. Tr. 17, 366-

8

69, 383-85, 402, 456. The ALJ further discussed that the medical evidence "as a whole does not show that the claimant is as limited as alleged." Tr. 14. She summarized Plaintiff's treatment notes in May 2007, which showed that Plaintiff had "intact muscle tone and strength and could move his extremities normally." Tr. 18, 404-06. Three visits to Plaintiff's primary care physician, Hursel Adkins, D.O., between May 2008 and September 2008 revealed that Plaintiff's reflexes were normal and he had no other gait-related abnormalities. Tr. 18, 597-98.

The ALJ noted a 14-month gap until November 2009 when Plaintiff first complained of back pain after a fall two months earlier and visited the emergency room. Tr. 18, 397-400. He was discharged in stable condition. Tr. 400. Two visits to Dr. Maria Villa, D.O., in December 2009 indicated that at the time Plaintiff had normal gait, balance and stance. Tr. 330-32. After the second visit, Plaintiff reported his pain control was satisfactory with medication. Tr. 326-29. Dr. Villa recommended that Plaintiff return to her in two months (Tr. 328), which the ALJ noted supports a finding that Plaintiff's condition had stabilized. Tr. 18. The ALJ further discussed May 2010 treatment notes in which Plaintiff again complained of sharp back pain, but noted that this was after he helped a friend with baseboards. *Id.,* Tr. 319-22. X-rays taken at that time showed normal neurological and back examinations, and Plaintiff was prescribed pain medicine. Tr. 315-18.

The ALJ discussed Plaintiff's admission to the hospital in December 2010 for back pain after he fell four days earlier. Tr. 19, 372-77. At that time his gait was

antalgic.[2]  *Id.*  An MRI revealed a compression fracture of the L-2 vertebrae (Tr. 375); and shortly thereafter in December 2010, Plaintiff underwent a micro discectomy and osteophytectomy performed by Douglas Savage, M.D.  Tr. 370-71.  After three follow up visits with Dr. Savage between January and March 2011 in which Plaintiff's leg pain had improved substantially, Dr. Savage noted that Plaintiff was only to return on an as needed basis, which the ALJ opined suggests "that [Plaintiff's] back had stabilized."  Tr. 19, 441-443, 448-49.  The ALJ further described a March 2011 lumbar spine MRI that showed post-surgical change without any evidence of residual or recurrent disc herniation (Tr. 440), which she noted further supported a finding that his back condition had improved significantly and "that he could do less than sedentary work," consistent with her RFC determination.  Tr. 19.

The ALJ noted that while recovering from back surgery, Plaintiff was treated by Dr. Kenneth Berdick, M.D. of Vocational Rehabilitation for right shoulder and left knee pain in December 2010.  Tr. 19, 413-16.  Dr. Berdick determined that Plaintiff had right bicipital tendon tenderness, restriction to right shoulder abduction and elevation, left knee tenderness to palpation and restriction to flexion.  *Id.*  Dr. Berdick also noted in the records for the same visit that Plaintiff had no edema, negative straight leg raises and a normal gait.  *Id.*  Dr. Berdick diagnosed right shoulder bursitis and left knee degenerative joint disease and noted most of Plaintiff's medical problems were deteriorating because of his morbid obesity.  *Id.*  He recommended

---

[2] **Antalgic gait** is defined as a limp adopted so as to avoid pain on weight-bearing structures, characterized by a very short stance phase. http://medicaldictionary.thefreedictionary.com.

diet, exercise and trigger point injections in his left knee and right shoulder. *Id.* Dr. Berdick referred Plaintiff to an orthopedic surgeon. *Id.*

The ALJ discussed that in March 2011, Dr. Charles P. Springer, M.D., evaluated Plaintiff's right shoulder and left knee. Tr. 19, 438-39. Dr. Springer diagnosed Plaintiff with internal derangement of the left knee, a possible meniscus tear and possible chronic pre-patellar bursitis, right shoulder pain and weakness and a possible rotator cuff injury. Tr. 439. Dr. Springer recommended that Plaintiff have an MRI and continue exercise. *Id.* After review of the MRI, taken in April 2011, Dr. Springer recommended shoulder surgery and noted Plaintiff wanted to hold off on knee replacement surgery because of his age and instead offered a cortisone injection. Tr. 508-09.

Dr. Springer performed a left knee arthrogram, and two weeks later Plaintiff reported dramatic improvement from the injection. Tr. 501-07. Later in June 2011, Dr. James Taylor, D.O. noted Plaintiff had many medications from different providers that he was not taking. Tr. 537-39. Dr. Taylor found no neck abnormalities, no decreased response to stimulation by vibration and normal gait and stance. *Id.*

In July 2011, Dr. Springer performed surgery on Plaintiff's right shoulder. Tr. 444-45. The ALJ discussed that follow up appointments in September and October 2011 revealed that Plaintiff was doing "extremely well" in physical therapy and that his medications were helping his symptoms. Tr. 20, 490-93. The ALJ discussed Plaintiff's treatment beginning in March 2012 with pain management specialist Stephen Ross, M.D. Tr. 20, 527-32. Plaintiff saw Dr. Ross for four visits, and during

11

his final visit in May 2012 Plaintiff showed normal cervical and thoracic spine range of motion and had normal lower extremity strength and sensory exams. Tr. 527-28. Although the ALJ also noted that the exams also showed that Plaintiff had an ataxic gate[3] (Tr. 20), Dr. Ross' notes also showed that Plaintiff's activities of daily living had improved with treatment and that his shoulder and left knee pain had decreased to moderate levels. Tr. 527-28.

The ALJ summarized that Plaintiff had multiple positive findings but there were also a large gaps in his treatment record. Tr. 20. She further noted that treatment records after Plaintiff's surgeries showed that he had significant improvement in his symptoms. Tr. 20-21. The ALJ further discussed records in which Cortisone injections in Plaintiff's knee caused "dramatic improvement," and March 2011 notes that showed Plaintiff did a lot of lifting of donated furniture." Tr. 21.

Upon review of the record, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff did not meet or equal an impairment in Listing 1.02, and Plaintiff has failed to meet this burden to show otherwise. Although the ALJ was not required to recite the evidence that lead to her determination, *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986), here she did so in detail when considering Plaintiff's RFC. Furthermore, the Court agrees with the Commissioner that it was not error for the Commissioner to fail to consult a medical expert to assess

---

[3] **Ataxic gait** is defined as "a wide based gait with lateral veering, unsteadiness, and irregularity of steps." http://www.medilexicon.com/medicaldictionary.php.

whether Plaintiff's condition medically equaled Listing 1.02. Doc. 23 at 10. Based on her review of the record, the ALJ concluded that the medical evidence "as a whole does not show that the claimant is as limited as alleged," and there was no medical source reporting findings equivalent in severity to the criteria of the listed impairments she considered, including Listing 1.02. Tr. 14, 17. And, as noted by the Commissioner, Plaintiff fails to point to any objective findings of record equal or equivalent to the listing. Doc. 23 at 9. Accordingly, the law judge did not err in concluding that Plaintiff did not meet the listing.

### B. *Whether the ALJ properly evaluated the medical opinion evidence*

Finally, Plaintiff contends that the ALJ did not give adequate weight to the opinion of his treating physicians, psychiatrist Gregory Young, M.D., and pain management specialist Stephen Ross, M.D. Doc. 22 at 22-23. Although the testimony of a treating physician is generally entitled to "substantial or considerable weight," the ALJ may discount that testimony when there is "good cause." *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists "where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding." *Id.* The Eleventh Circuit has provided guidance in evaluating the weight to be accorded a treating physician: "We will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." *Hunter,* 2015 WL 8754457 at *3, *citing Moore*, 405 F.3d at 1212.

Here the ALJ did just that. Plaintiff's treating psychiatrist opined, among other things, that he had poor to no ability to deal with stress, poor to or no ability to

13

understand, remember and carry out simple job instructions and poor to no ability to behave in an emotionally stable manner or relate predictably in social situations. Tr. 451-42. The ALJ found that opinion inconsistent with the medical records and other evidence, and gave it less weight on that basis. Tr. 27.

Similarly, Plaintiff's pain management specialist, Dr. Ross, opined, among other things, Plaintiff could only lift 5 to 10 pounds, stand or walk less than one hour in an eight-hour workday, sit less than thirty minutes uninterrupted and less than one hour total in an eight-hour workday, and occasionally balance; but he could never climb, stoop, crouch, kneel, or crawl. Tr. 544-45. He also opined that Plaintiff required 15-30 minute rest periods during the day during which he may need to lie down. Tr. 546. He noted that Plaintiff's reaching, handling, feeling, pushing and pulling are affected by his impairments and that Plaintiff's condition required a cane and a brace to ambulate. *Id.* Dr. Ross further opined Plaintiff would be expected to miss more than three days of work each month. Tr. 547.

Instead, as noted, *supra*, the ALJ found that treatment records reflected that Plaintiff's gait and stance were normal and he had significant improvement with his cortisone injections and surgery. Tr. 26, 317, 321, 327, 414, 415, 504-07, 538, 595, 597. The ALJ further observed that Plaintiff lifted donated furniture for his youth ministry in March 2011 (Tr. 26, 438) and concluded that these findings demonstrate that Plaintiff could perform activities including standing, walking, and sitting for substantially longer periods than opined by Dr. Ross. Tr. 26.

14

Because the ALJ's rationale was adequate as to her findings with respect to both treating physicians and the weight she accorded their opinions, the Court will not disturb the credibility determinations. *Hunter,* 2015 WL 8754457 at *3. Given the record as a whole, substantial evidence supports the ALJ's decision to give little weight to the opinions of Dr. Young and Dr. Ross.

> C. *Whether substantial evidence supports the ALJ's finding that Plaintiff can perform other work*

Plaintiff lastly asserts that the ALJ should have included a limitation in the RFC and the hypothetical question presented to the VE to frequent handling and fingering. Doc. 22 at 23-24. If so, Plaintiff argues, he would be unable to perform the final assembler and table worker jobs identified by the VE. *Id.* at 23. The Commissioner counters that substantial evidence does not support that Plaintiff had handling or fingering limitations, thus the ALJ properly assessed Plaintiff's RFC. Doc. 23 at 19. Because the ALJ found that Plaintiff failed to prove he had additional or disabling limitations than those noted in the RFC, she was not required to include additional limitations in her hypothetical questions to the VE. *Id.*

While an ALJ's hypothetical question must take into account all of a claimant's impairments, *Wilson,* 284 F.3d at 1227, the question need not include impairments that the ALJ has properly determined to be unsupported by the evidence in the record. *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1161 (11th Cir. 2004). Here, the ALJ gave little weight to Dr. Ross' opinions concerning Plaintiff's limited ability to reach, hand, feel, push and pull, noting that the evidence instead supports a finding that he is "generally not as limited as noted by Dr. Ross." Tr. 26. Accordingly, the

ALJ did not err in failing to consider these additional limitations in her final hypothetical to the VE.

### IV.

Upon review of the record, the undersigned concludes that the ALJ applied the proper legal standards, and his determination that Plaintiff is not disabled is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 14th day of January, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record